UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| BODY BY COOK, INC.,[1] | CIVIL ACTION |
|---|---|
| Plaintiff | |
| VERSUS | NO. 15-2177 |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE CO. | SECTION: "E" (5) |
| Defendant | |

## ORDER AND REASONS

This civil action involves a racial discrimination claim under 42 U.S.C. § 1981. Plaintiff, Body by Cook, Inc. ("BBC"), is an automotive repair shop located in Slidell, Louisiana, which is owned and operated by Robert Cook.[2] Plaintiff alleges that, on numerous occasions, Robert Cook attempted to register BBC as a "Direct Repair Shop" through the Select Service Program of Defendant State Farm Mutual Automobile Insurance Co. ("State Farm").[3] According to BBC, despite its many attempts to contract with State Farm, State Farm has "refused to contract with Plaintiff[] but ha[s] continued to contract with—and make itself available to contract with—similarly situated or lesser qualified white-owned or non-minority owned body shops."[4] Plaintiff alleges that State Farm discriminated against BBC because Robert Cook, its sole owner, is an African-American male.[5] After the Fifth Circuit affirmed this Court's dismissal of several of BBC's claims, only BBC's claim against State Farm under 42 U.S.C. § 1981 for refusal to contract remains.[6]

---

[1] The United States Court of Appeals for the Fifth Circuit concluded that Plaintiff Robert Cook is not the proper party to contract with State Farm and thus cannot bring a claim under 42 U.S.C. § 1981. *Body By Cook, Inc. v. State Farm Mutual Auto. Ins.*, 869 F.3d 381 (5th Cir. 2017). The sole remaining Plaintiff is Body By Cook, Inc.
[2] R. Doc. 109 at 1; R. Doc. 198-1 at 10.
[3] R. Doc. 109 at 1.
[4] *Id.* at 13.
[5] *Id.* at 1, 14.
[6] *Body By Cook, Inc.*, 869 F.3d 381.

Before the Court is a Motion for Summary Judgment filed by Defendant State Farm Mutual Automobile Insurance Co.[7] Plaintiff opposes the motion.[8] Defendant filed a reply.[9] Defendant argues there are no material facts in dispute and it is entitled to judgment as a matter of law because Plaintiff's claim is barred by the applicable statute of limitations.[10] Alternatively, Defendant argues it is entitled to judgment as a matter of law because Plaintiff (1) cannot make a prima facie case of racial discrimination, (2) cannot rebut Defendant's legitimate, non-discriminatory reason for why it did not contract with BBC, and (3) cannot demonstrate it has sustained any damages.[11] For the reasons that follow, the Motion for Summary Judgment is **GRANTED**.

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] "An issue is material if its resolution could affect the outcome of the action."[13] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[14] All reasonable inferences are drawn in favor of the nonmoving party.[15] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable

---

[7] R. Doc. 198.
[8] R. Doc. 208.
[9] R. Doc. 211.
[10] R. Doc. 198-1 at 6, 8-9.
[11] R. Doc. 198 at 6.
[12] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[13] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[14] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[15] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[16]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[17] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[18]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[19] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to

---

[16] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[17] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[18] *Celotex*, 477 U.S. at 322–24.
[19] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

summary judgment as a matter of law.[20] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[21] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[22] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[23] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[24]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56

---

[20] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[21] *Celotex*, 477 U.S. at 332–33.
[22] *Id.*
[23] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[24] *Id.*; *see also First National Bank of Arizona*, 391 U.S at 289.

does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[25]

**FACTS**

BBC alleges it is a minority owned body shop.[26] The following facts are not in dispute.[27] BBC was not admitted to State Farm's Select Service program and as a result did not receive a contract.[28] Fradella's, another body shop, sought admission to the Select Service Program in 2010, but at that time there were already five shops participating in Slidell and hence no need for another shop to be admitted to the program.[29] Fradella's was admitted to the Select Service Program in May of 2011, shortly after another Slidell shop was removed from the program.[30] On October 26, 2011, BBC sent a letter to State Farm inquiring about admission into State Farm's Select Service Program.[31] At that time, there were five Select Service shops operating in Slidell.[32] State Farm replied to BBC on November 22, 2011, advising BBC that State Farm was not considering BCC for admission

---

[25] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

[26] In its complaint, Plaintiff alleges that it is a "100% African American-owned body shop." R. Doc. 109 at 1, 13. In its answer, State Farm denies, for lack of sufficient information, the allegation that BBC is a 100% African-American owned business. R. Doc. 176 at 10. State Farm admits that Robert Cook is African-American. R. Doc. 176 at 10. Defendant does not move for summary judgment on the grounds that BBC is not a member of a protected class. The Court will assume, for summary judgment purposes, that BBC is a member of a racial protected class.

[27] BBC states that paragraphs 11, 12, 15, 19, 21, and 22 of State Farm's statement of uncontested material facts are *not uncontested* and provides its own statement of uncontested facts. R. Doc. 208-1. The Court will consider each of the facts BBC specifically lists as denied. Pursuant to Local Rule 56.2, the Court deems as admitted any of State Farm's material facts that are uncontroverted in BBC's statement of material facts. BBC apparently contends its statement of material facts is also undisputed. R. Doc. 208-1. BBC is only required to list facts it contends create a genuine dispute of material fact in order to avoid summary judgment. Furthermore, Defendant, as movant, is not required to admit or deny the facts listed by BBC, and these facts are not deemed to be admitted.

[28] In its complaint, Plaintiff alleges that it did not receive a contract to join State Farm's Select Service Program. R. Doc. 109 at 1, 13. In its answer, State Farm admits that it has not invited Plaintiff Body By Cook to participate in its Select Service Program. R. Doc. 176 at 2.

[29] R. Doc. 204 at 2; R. Doc. 208-1 at 1.
[30] R. Doc. 204 at 3; R. Doc. 208-1 at 1.
[31] R. Doc. 204 at 3; R. Doc. 208-1 at 1.
[32] R. Doc. 204 at 3; R. Doc. 208-1 at 1.

5

to the program at that time.[33] State Farm further stated it would reconsider that decision should its business needs change.[34] BBC again inquired about admission into State Farm's Select Service Program in early 2014.[35] In the spring of 2014, there were five Slidell shops in the program.[36] The same five Slidell shops had participated in the Select Service Program from October of 2011 until the spring of 2014.[37] State Farm responded to BBC's inquiry on March 5, 2014, stating it was not considering BBC for admission to its Select Service Program at that time and again stating it would reconsider its decision should its business needs change.[38] After the March 5, 2011 letter, State Farm and BBC continued to communicate.[39] State Farm employees Ramona Latiolais and Kevin Barras visited BBC on July 10, 2014.[40]

State Farm asserts it is undisputed that, at the time BBC inquired about admission to the Select Service Program in October of 2011 and March of 2014 and when State Farm employees visited BBC in July of 2014, State Farm was not considering adding shops to the program and, as a result, there was no available contract.[41] State Farm employee Ramona Latiolais testified that, "[f]rom May 2011 through 2014," the same five Slidell body shops participated in the program.[42] Ms. Latiolais also testified that, at the time BBC sought admission to the Select Service Program in October of 2011 and March of 2014, there was no need for an additional Slidell shop in the Select Service Program because the five Select

---

[33] R.Doc. 204 at 3; R. Doc. 208-1 at 1; *see also* R. Doc. 198-2 at 7.
[34] R.Doc. 204 at 3; R. Doc. 208-1 at 1; *see also* R. Doc. 198-2 at 7.
[35] R.Doc. 204 at 4; R. Doc. 208-1 at 5.
[36] R. Doc. 204 at 4; R. Doc. 208-1 at 1.
[37] R. Doc. 204 at 4; R. Doc. 208-1 at 1.
[38] R.Doc. 204 at 4; R. Doc. 208-1 at 4; *see also* R. Doc. 198-2 at 8.
[39] R. Doc. 208-2 at 105-47; R. Doc. 211 at 1-3.
[40] R. Doc. 208-1 at 5; R. Doc. 208-2 at 141; R. Doc. 211 at 2-3.
[41] R. Doc. 204 at 3-4.
[42] R. Doc. 198-2 at 4.

6

Service shops in Slidell were sufficient for State Farm's business and customer needs.[43] State Farm employee Kevin Barras testified that there was no business need to add another Slidell shop to the Select Service Program when he visited BBC in July of 2014.[44] State Farm argues that this evidence establishes that no contract was available at the times BBC applied for the program.

BBC disputes the facts asserted by State Farm relating to the availability of a contract.[45] To establish that a material fact exists with respect to whether there was an available contract in July of 2014, BBC points to the email communications surrounding the July 10, 2014 visit.[46] State Farm's documentation after the visit reflects that employees Ramona Latiolais and Kevin Barras visited the shop, "stayed about an hour . . . and ended with Kevin asking Mr. Cook to stay in touch with me and whenever we have a need to add a Select Service shop in the Slidell area he would be one of the first to look at."[47] BBC also points to the fact that, when State Farm rejected BBC for the program in October of 2011 and March of 2014, State Farm did not indicate that it did *not* have any available contracts.[48] BBC argues these combined circumstances "g[a]ve BBC the impression that [State Farm] had available contracts."[49] Although BBC may have had the "impression" that State Farm had an available contract, this is not enough to create a disputed issue of fact.

Even viewing the evidence in the light most favorable to BBC,[50] and assuming the factual allegations put forth by BBC are true, no reasonable trier of fact could find that State

---

[43] *Id.* at 3.
[44] R. Doc. 198-6 at 2.
[45] R. Doc. 208-1 at 1.
[46] *Id.* at 5.
[47] *Id.* at 142.
[48] R. Doc. 208 at 10.
[49] *Id.*
[50] *Smith*, 298 F.3d at 440.

Farm had an available contract in July of 2014. BBC has not directed the Court's attention to "evidence already in the record that was overlooked or ignored" by State Farm that is sufficient to create a genuine issue of material fact with respect to whether there was an available contract.[51] The Court finds there are no disputed issues of material fact.

**LAW AND ANALYSIS**

**I.  The November 2011 and March 2014 Claims Are Time Barred**

Section 1981 does not contain its own statute of limitations. Instead, the Supreme Court requires courts to apply a limitations period that is applicable to similar claims under state law.[52] For Section 1981 claims in Louisiana alleging precontract misconduct, the Fifth Circuit applies Louisiana's one-year prescriptive period for torts.[53] "Although state law governs the substantive limitation[s] period, federal law determines when a civil rights action accrues and, therefore, when the statute of limitations begins to run."[54] The Fifth Circuit has held that "[t]he limitations period for [Section] 1981 employment discrimination cases commences when the plaintiff knows or reasonably should know that the [challenged] discriminatory act has occurred."[55] This takes place "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured."[56]

---

[51] *See Celotex*, 477 U.S. at 322–24
[52] *See Del. State Coll. v. Ricks*, 449 U.S. 250, 255 n. 5 (1980); *see also Braden v. Texas A & M Univ. Sys.*, 636 F.2d 90, 92 (5th Cir.1981) ("federal courts apply the state law statute of limitations governing an analogous state cause of action").
[53] *Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x 363, 367-68 (5th Cir. 2008); *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 341–42 (5th Cir.2005).
[54] *Perez v. Laredo Junior Coll.*, 706 F.2d 731, 733 (5th Cir.1983); see also *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir.1989).
[55] *McWilliams v. Escambia Cty. Sch. Bd.*, 658 F.2d 326, 330 (5th Cir.1981); *see also Jones v. Alcoa, Inc.*, 339 F.3d 359, 364 (5th Cir. 2003).
[56] *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (quoting *Russell v. Bd. of Trustees*, 968 F.2d 489, 493 (5th Cir. 1992)).

BBC filed suit on June 16, 2015, bringing a claim against State Farm for its failure to contract with BBC.[57] BBC argues that State Farm failed to contract with it on three occasions—(1) November of 2011, (2) March of 2014, and (3) July of 2014.[58] BBC argues the statute of limitations did not begin to run on its March 2014 claim until July of 2014 because it did not have reason to know of the challenged discriminatory failure to contract until then.[59]

The parties do not dispute that State Farm sent BBC a letter on November 22, 2011, advising BBC that State Farm was not considering its facility for the Select Service Program.[60] There is no dispute that State Farm sent BBC another letter on March 5, 2014, advising BBC that State Farm was not considering its facility for the Select Service Program at that time.[61] State Farm's letters to BBC clearly state that it is not considering BBC for admission to the Select Service Program, giving BBC notice that it sustained injury.[62] BBC did not file suit until June 16, 2015.[63] The alleged instances of State Farm's discriminatory failure to contract in November of 2011 and March of 2014 are time barred.[64] State Farm is entitled to judgment as a matter of law on those claims.

BBC also makes a claim based on State Farm's failure to contract in July of 2014 after the State Farm representatives' visit to BBC.[65] BBC timely asserted its claim based on State Farm's alleged discriminatory refusal to contract with it at the time of the July 2014

---

[57] R. Doc. 1 (Complaint); R. Doc. 109 (Amended Complaint).
[58] R. Doc. 208 at 6-7.
[59] *Id.*
[60] R. Doc. 198-2 at 7; R. Doc. 204 at 3-4; R. Doc. 208-1 at 4.
[61] R. Doc. 198-2 at 8; R. Doc. 204 at 4; R. Doc. 208-1 at 4.
[62] *See McWilliams*, 658 F.2d at 330; *see also Jones*, 339 F.3d at 364.
[63] R. Doc. 1.
[64] *See Mitchell*, 265 F. App'x at 370 (finding allegations of discriminatory failure to contract time barred).
[65] R. Doc. 208 at 6-7.

visit, but summary judgment on that claim is granted nevertheless for the reasons stated below.

## II.  July 2014 Failure to Contract Claim

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts."[66] "Make and enforce contracts" is defined as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."[67] To establish a § 1981 claim for contractual discrimination, Plaintiff must establish that (1) it is a member of a racial minority; (2) Defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute—in this case, making a contract.[68] The parties do not dispute the first and third elements—that BBC is a minority owned body shop[69] and that the claim involves the making of a contract. The parties dispute whether State Farm intentionally discriminated against BBC on the basis of race.[70]

The analysis of discrimination claims under § 1981 is identical to the analysis of Title VII claims.[71] Courts employ the burden shifting analysis of *McDonnell Douglas v. Green* to analyze claims of intentional discrimination.[72] Under *McDonnell Douglas*, BBC must demonstrate four elements to establish a prima facie case of intentional racial discrimination at the summary judgment phase: (1) membership in a protected class; (2)

---

[66] 42 U.S.C. § 1981(a).
[67] 42 U.S.C. § 1981(b).
[68] *Body By Cook, Inc.*, 869 F.3d at 386; *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997); *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994).
[69] See notes 26 and 27.
[70] R. Doc. 1981-1; R. Doc. 208.
[71] *Jones v. Robinson Prop. Grp. L.P.*, 427 F.3d 987, 992 (5th Cir. 2005).
[72] *Id.*

that it sought and was qualified to receive an *available* contract; (3) that its contract proposal was rejected or that it received a contract on unfavorable terms; and (4) similarly-situated individuals or entities not in the protected class *received a contract*.[73] "Once established, the plaintiff's prima facie case raises an inference of intentional discrimination."[74] The parties dispute two elements—whether there was an available contract to award BBC in July of 2014 and whether a similarly situated non-minority body shop received a contract.[75]

### (a) There Was No Available Contract

The Court has found it undisputed that State Farm did not have an available contract in July of 2014.[76] As a result, BBC is unable to establish this element of its prima facie case for discriminatory failure to contract in July of 2014, and State Farm is entitled to judgment as a matter of law on this basis.

### (b) No Similarly-Situated Non-Minority Was Treated More Favorably

State Farm also argues that BBC cannot establish its prima facie case because it cannot demonstrate that a similarly situated non-minority entity was treated more favorably than BBC. BBC points to the admission of another body shop to the Select Service Program in May of 2011 as evidence that a non-minority entity was treated more favorably.[77] The parties do not dispute that Fradella's was admitted to the Select Service Program in May of 2011.[78] Although both parties argue about the similarity or dissimilarity of Fradella's and BBC,[79] neither party presents evidence with respect to whether Fradella's

---

[73] *Body By Cook*, 869 F.3d at 386 n. 1 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973)).
[74] *LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 (5th Cir. 1996).
[75] R. Doc. 198-1 at 11-12; R. Doc. 208 at 9-11.
[76] *See* discussion *supra* pp. 6-8.
[77] R. Doc. 109 at 11; R. Doc. 208 at 12-14.
[78] R. Doc. 204 at 3; R. Doc. 208-1 at 1.
[79] R. Doc. 198-1 at 27- 19; R. Doc. 208 at 11-14.

11

is or is not a non-minority entity. Regardless, the admission of a non-minority shop to State Farm's Select Service Program in May of 2011 does not create a disputed issue of fact as to whether State Farm treated a similarly-situated non-minority entity more favorably than BBC in July of 2014.[80] As a result, BBC is unable to establish this element of its prima facie case for discriminatory failure to contract in July 2014, and State Farm also is entitled to judgment as a matter of law on this basis.

### (c) There Was a Legitimate Non-Discriminatory Reason BBC Did Not Receive a Contract

If BBC had established its prima facie case for a discriminatory failure to contract in July of 2014, an inference of discrimination would arise, and the burden would shift to State Farm to articulate a legitimate, non-discriminatory reason for its decision.[81] "If the defendant comes forward with a reason which, if believed, would support a finding that the challenged action was nondiscriminatory, the inference [of discrimination] raised by the plaintiff's prima facie case drops from the case."[82] Then, BBC must produce evidence that the legitimate reason offered by State Farm was not its true reason but rather was a pretext for discrimination.[83] BBC can demonstrate pretext by introducing evidence "that the proffered reason [is] unworthy of credence" [84] or evidence that the reason, although true,

---

[80] *See Lee v. Kansas City So. Ry.*, 574 F.3d 253, 259 (5th Cir.2009) ("Employees . . . who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated."); *see also Tibbs v. Calvary United Methodist Church*, 505 F. App'x 508, 515–16 (6th Cir.2012) (concluding that "comparators were not similarly situated in that there is no temporal nexus to the events here" when disciplinary decisions concerning comparators were seven months to two years removed from plaintiff's termination); *McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, 1136 n. 2 (8th Cir.2006) (employee hired over three years later, with no other facts in record, was not similarly situated in all relevant respects to the plaintiff); *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 546 (4th Cir.2003) (concluding that employee, identified by defendant as similarly situated to plaintiff to rebut inference of discrimination in defendant's failure to hire plaintiff, was not similarly situated to plaintiff where the employee "was not hired until several months after Bryant filed charges of racial discrimination").
[81] *LaPierre,* 86 F.3d at 448.
[82] *Id.*
[83] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 144 (2000); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).
[84] *Burdine*, 450 U.S. at 256.

was only one reason for the decision, and that BBC's status as an entity in a protected class was another motivating factor.[85] To meet the motivating factor prong, BBC is required to show that race "actually played a role" in the decision-making process "and had a determinative influence on the outcome."[86]

### (i) State Farm's Reasons For Its Decision Have Not Been Shown to Be Untrue

State Farm listed three legitimate, non-discriminatory reasons for its decision— (1) there was no available contract to award BBC; (2) it would not admit BBC to the program because BBC was previously removed from a State Farm program because of misrepresentations about its repair work; and (3) BBC did not have sufficient staffing, customer service, or repair work for admission to the Select Service Program.[87] BBC has not produced evidence that the proffered reasons are not worthy of credence, or that there are disputed issues of fact with respect to whether or not they are true, and instead were a pretext for discrimination.

### (ii) State Farm's Reasons Are Not Pretextual

BBC argues that State Farm's proffered reasons, if true, were not the real reasons for State Farm's refusal to contract with BBC and that BBC's status as a minority entity was a motivating factor in State Farm's decision not to contract with BBC.[88] BBC points to an email sent in 2011 from State Farm employee Ramona Latiolais to her supervisor as evidence that race played a role in State Farm's decision not to contract with BBC. The email recounts a phone call Ms. Latiolais received from Mr. Cook and states, "[h]e's pushing the

---

[85] *Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 261 (5th Cir. 2007).
[86] *Id.* (quoting *Reeves*, 530 U.S. at 141).
[87] R. Doc. 198-1 at 19.
[88] R. Doc. 208 at 2-6; R. Doc. 208-1 at 5.

minority button issue."[89] BBC also points to an email sent in 2014 from Ms. Latiolais to her supervisor stating, "I am done with him [Mr. Cook], if he calls again I will simply generate a form letter that we thank him for the interest but not considering his shop for SS. I don't think a minority issue should make a difference."[90] BBC highlights that during State Farm's visit to BBC in July 2014, Ms. Latiolais "was rude to Mr. Cook, as she previously had been on the phone, and did not speak to [Mr. Cook]; however, she spoke to Joel Rutter, a white man, who was at BBC at the time of the inspection."[91] Joel Rutter testified that Ms. Latiolais "talked to me. But she didn't talk to him [Mr. Cook]."[92] BBC additionally puts forth the testimony of Joel Rutter and Ronald Washington as evidence that State Farm's refused to contract with BBC for discriminatory reasons.[93] Joel Rutter testified that Ms. Latiolais was rude and unprofessional on the phone and that he felt "it was a racial thing" that State Farm refused to contract with BBC.[94] Ronald Washington testified he believed it was discriminatory that BBC was not admitted to the Select Service Program.[95]

BBC is unable to demonstrate that the legitimate-nondiscriminatory reasons offered by State Farm are pretextual because none of State Farm's actions show the requisite *racial* animus towards BBC. Although Ms. Latiolais may have been "rude and unprofessional,"[96] there is no evidence that the alleged rudeness was motivated by racial animus. The only racially related comments that BBC presents[97] do not indicate discriminatory intent because they are neither derogatory nor disparaging. Ms. Latiolais was aware that BBC "was

---

[89] R. Doc. 208-2 at 33.
[90] *Id.* at 31.
[91] R. Doc. 208-1 at 5.
[92] R. Doc. 208-2 at 27.
[93] R. Doc. 208-1 at 7.
[94] R. Doc. 208-2 at 38.
[95] *Id.* at 41-42.
[96] R. Doc. 208-1 at 5; R. Doc. 208-2 at 38.
[97] R. Doc. 208-2 at 31, 33.

pushing the minority button issue" and said she did not "think a minority issue should make the difference."[98] BBC's speculation that Ms. Latiolais' behavior was racially motivated is insufficient to create a genuine issue of material fact[99] with respect to whether race "actually played a role" in State Farm's decision-making process "and had a determinative influence on the outcome."[100] As a result, State Farm is entitled to judgment as a matter of law on this basis.[101]

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion for Summary judgment filed by Defendant State Farm Mutual Automobile Insurance Co.[102] is **GRANTED**.[103]

**IT IS FURTHER ORDERED** that State Farm Mutual Automobile Insurance Co. is entitled to judgment in its favor and against Body By Cook, Inc. on the Section 1981 claims.

**New Orleans, Louisiana, this 16th day of November, 2018.**

                                                        */s/ Susie Morgan*
                                               **SUSIE MORGAN**
                                  **UNITED STATES DISTRICT JUDGE**

---

[98] R. doc. 208-1 at 5.
[99] *See Brown v. CSI Logic, Inc.*, 82 F.3d 651, 655 (5th Cir.1996) ("Guesswork and speculation [of racial animus] simply cannot serve as a basis for sending a case to a jury."); *Montgomery v. Sears Roebuck & Co.*, 720 F. Supp. 2d 738, 745 (W.D. La. 2014) ("Fifth Circuit precedent makes it clear that subjective belief of racial motivation cannot import racial animus into an individual's conduct.").
[100] *Id.* (quoting *Reeves*, 530 U.S. at 141).
[101] Additionally, State Farm does contract with several minority body shops. Although State Farm does not track the race or ethnicity of the owners of body shops, it states that upon information and belief, three body shops that participate in the Select Service Program in the greater New Orleans area are minority-owned. *See* R. Doc. 208-2 at 152-53.
[102] R. Doc. 198.
[103] The Court does not address the additional argument made by State Farm that BBC did not sustain damages.